**Papetti Samuels Weiss LLP**
Scottsdale Quarter
15169 North Scottsdale Road
Suite 205
Scottsdale, AZ 85254

**Jared Sutton** (State Bar No. 028887)
Direct Dial: 480.800.3527
Email: jsutton@PSWfirm.com

**Jennifer Lee-Cota** (State Bar No. 033190)
Direct Dial: 480.800.3528
Email: jleecota@PSWfirm.com

*Attorneys for Plaintiff Best Western International, Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Best Western International, Inc., | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Brookfield Ventures, LLC; Yadewinder Dhillon and Gurpreet Dhillon, individuals, | |
| Defendants. | |

Plaintiff Best Western International, Inc. ("Best Western"), for its Complaint against Brookfield Ventures, LLC, Yadewinder Dhillon, and Gurpreet Dhillon, alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Best Western is a non-profit corporation organized under Arizona law with its headquarters located in Phoenix, Arizona.

2. Upon information and belief, Defendant Brookfield Ventures, LLC ("Brookfield") is a Wisconsin liability company with its principal place of business in Brookfield, Wisconsin.

3. Upon information and belief, Defendant Yadewinder Dhillon ("Dhillon") is a resident of California.

4. Defendant Gurpreet Dhillon is Defendant Dhillon's spouse and, upon

information and belief, is also a resident of California. Defendant Gurpreet Dhillon is named solely for community property purposes.

5. Upon information and belief, Defendants Yadewinder and Gurpreet Dhillon are the sole members of Brookfield.

6. Brookfield executed a Best Western Membership Agreement on January 26, 2016, pursuant to which, among other things, it agreed that all disputes arising from or related to the membership application process, the membership agreement, or termination of membership would be resolved exclusively in the state or federal courts in Maricopa County, Arizona.

7. Brookfield designated Dhillon as the Voting Member for the membership. As Voting Member, he agreed to be bound by the terms in the Membership Agreement.

8. This Court has jurisdiction over the claims and venue is proper pursuant to 28 U.S.C. §§ 1391 and 1332 because: (1) Best Western is an Arizona non-profit corporation with its principal place of business in Phoenix, and its witnesses are either located in Phoenix or available in Phoenix; (2) Defendants are citizens of Missouri and California; (3) the amount in controversy exceeds $75,000.00; (4) there are no matters pending between the parties in any other jurisdiction; and (5) Defendants executed a contract that contained a forum-selection clause requiring all disputes arising from that contract to be resolved by a state or federal court in Arizona and according to Arizona law.

9. The exercise of personal jurisdiction over Defendants by this Court is proper pursuant to and because, among other reasons, Defendants expressly agreed to litigate all disputes with Best Western arising from or related to the contracts with Best Western, or any relationship between the parties, in state or federal courts located in Maricopa County, Arizona.

**GENERAL ALLEGATIONS**

10. Best Western is a hotel-industry, service organization that operates on a cooperative basis by and for its hotelier members, which are independent owners and

operators of Best Western® branded hotels.

11. Best Western provides its members with a reservations system and marketing campaigns, as well as an option to participate in collective purchasing of hotel equipment, furnishings, and supplies (the "Best Western Services"), among other services that members can elect to purchase.

12. The rights and obligations of Best Western's members are determined by the member hotels and are set forth in the Membership Agreement, Best Western's Bylaws & Articles (the "Bylaws"), Best Western's Rules and Regulations (the "Rules and Regulations"), Board Policies, and other Best Western "Regulatory Documents," as that term is defined in Best Western's Bylaws (collectively the "Regulatory Documents").

13. In exchange for receiving Best Western Services, Best Western members are obligated to, among other things, pay annual dues, monthly fees, membership fees, and other assessments/charges, and to abide by all obligations as may be established from time to time in the Regulatory Documents, which are expressly incorporated by reference into the Membership Agreement. (*See* Ex. A, Membership Agreement ¶ A(1)-(2).)

14. The membership fees are due on December 1 of each year but are billed, as a courtesy, in monthly installments over the course of the following year to accommodate members.

15. Annual dues are charged in August of each year. All other dues, fees, charges, and assessments are billed monthly.

16. Pursuant to the Membership Agreement and Regulatory Documents, Defendants agreed to a four-year term, "to timely pay all fees, dues, charges, and assessment imposed generally on the Membership by the Best Western Board of Directors ('Board') or the Membership, and the cost of all goods and services provided by or ordered through Best Western," that "[p]ast due amounts shall bear interest at the rate of one and one half percent (1.5%) per month from the due date until paid, provided

3

that such interest charge shall in no way authorize or excuse late payments or limit Best Western's rights and remedies against Member," that "any Member may resign from the Membership at any time, but if a Member resigns or is terminated, fees and dues for the remainder of the Initial Term (if still in the Initial Term) . . . become immediately due and payable." (*See* Ex. A, Membership Agreement ¶ A(2), B(2); Ex. B, Bylaws, Art. II § 5(B).)

17. Pursuant to the Membership Agreement and Regulatory Documents, Defendants agreed that if they resigned or were cancelled/terminated by Best Western that "all fees, dues, and charges for the remainder of the . . . Four-Year Term . . . become immediately due and payable." (*See* Ex. A, Membership Agreement ¶ B(2); Ex. B, Bylaws, Art. II § 5(B).).

18. The Bylaws and Rules and Regulations are expressly incorporated by reference into the Membership Agreement. (*See* Ex. A, Membership Agreement ¶ A(1) and E.)

19. Each Best Western member is authorized to use the trade name, trademarks, service marks, logos, and other intellectual property and similar identifying symbols owned by Best Western (the "Best Western Marks") in connection with its hotel pursuant to a limited, non-exclusive license (the "Best Western License"), which is set forth in the Membership Agreement. (*See* Ex. A, Membership Agreement ¶ D.)

**DEFENDANTS' BEST WESTERN MEMBERSHIP**

20. Brookfield applied for a Best Western membership for a hotel located at 1005 South Moorland Road in Brookfield, Wisconsin, known as the "Best Western Premier Milwaukee-Brookfield Hotel & Suites" (the "Hotel").

21. Brookfield executed a Membership Application and Agreement on January 26, 2016. Dhillon executed the Membership Agreement on Brookfield's behalf as its "Managing Partner." (*See* Ex. A, Membership Agreement at 7.)

22. Based on materials submitted by Brookfield and Dhillon, Dhillon and Gurpreet Dhillon are the only members of Brookfield.

4

23. Brookfield designated Dhillon as its Voting Member. As the Voting Member, Dhillon agreed to "be bound by the Membership Application and Agreement executed in connection with" the Hotel. (*See id*., ¶ K, & at Ex. A, Addendum A.)

24. Having accepted that designation, Dhillon certified that he understood and agreed to meet Best Western membership requirements, and that he agreed to be personally liable for the responsibilities of the Hotel's Best Western affiliation, including the Membership Agreement and Regulatory Documents. (*Id*.)

25. Defendants were, and are, jointly bound by the Membership Agreement and Regulatory Documents. (*See*, Ex. A, Membership Agreement ¶ K.)

26. Each month Best Western sent Defendants monthly invoices with respect the membership for the Hotel. Those invoices included an "aging summary," showing the current balance due, any amounts past due by 30 days, any amounts past due by 60 days, any amounts past due by 90 days, and any amounts past due by 120 days or more. Many charges were billed in arrears for reservation activity that occurred the month before.

27. Best Western sent Defendants several letters concerning outstanding amounts that Defendants owed with respect to the membership for the Hotel.

28. On December 11, 2020, Dhillon notified Best Western via e-mail that Defendant Prestige was terminating its membership, effective December 17, 2021.

29. On December 14, 2020, Best Western sent a letter to Defendants confirming the request for self-termination, effective December 17, 2020, and asked Defendants to make arrangements to satisfy the remaining balance owed on the Best Western account for the Hotel as soon as possible, including charges for the fees and dues for the remainder of the initial term of the Membership Agreement. (Ex. C, 12/14/20 Letter.) To date, Defendants have not paid these balances.

30. At the time Defendants requested self-termination, they owed $151.333.11, in pre-termination fees and charges and interest, most of which was well over 120 days past due, as shown on the December 1, 2020, invoice for the Hotel. (*See* Ex. D, July

5

2020 – January 2022 Monthly Statements).

31. Prior to the self-termination, Defendants had received multiple notices about their outstanding account and each month the current and past due balances were shown in the "aging summary" of their monthly statements. (Ex. E, 9/1/2020 Letter; Ex. F, 10/12/20 Letter; *see* Ex. D, July 2020 to November 2020 Monthly Statements)

32. Best Western's December 14, 2020, letter confirming the self-termination also noted that Defendants were required by the Membership Agreement to de-brand and cease using Best Western's trademarks and logos ("Marks") by January 1, 2020.

33. Best Western's December 14, 2020, letter confirming the self-termination included a request that Defendants return a "Logo Removal Checklist and Affidavit" and submit photographs showing that all Best Western Marks had been removed by January 1, 2020. (Ex. C.). To date, Defendants have not returned the Logo Removal Checklist and Affidavit.

34. Upon information and belief, the Hotel is affiliating with another hotel brand, Intercontinental Hotels & Resorts (aka IHG).

**DEFENDANTS HAVE FAILED TO PAY PRE-TERMINATION AND POST-TERMINATION FEES AS REQUIRED BY THE MEMBERSHIP AGREEMENT**

35. After receiving Best Western's December 14, 2020, letter confirming the self-termination, Defendants did not make arrangements to pay or pay the outstanding sums owed on the Best Western account for the Hotel or the liquidated damages owed, nor did Defendants return the "Logo Removal Checklist and Affidavit" and submit photographs showing that all Best Western Marks had been removed by January 1, 2020.

36. Following the self-termination, Best Western has continued to send Defendants an invoice each month showing the outstanding sums (with interest) owed. (Ex. D, January 2021 to January 2022 Monthly Statements).

37. On August 4, 2021, Best Western sent a demand letter to Defendants with respect to the outstanding amounts owed to Best Western as provided in the Membership Agreement and Regulatory Documents, which described the amounts for pre-termination

6

services, liquidated damages, and interest with a total owed of $265,394.25. (Ex. G, 8/4/21 Letter.)

38. In its August 4, 2021, letter, Best Western invited a discussion about the amounts owed, but Defendants did not respond. (*Id*.)

39. On August 25, 2021, Best Western's outside counsel sent a demand letter to Defendants with respect to the amounts owed. Defendants did not respond. (Ex. H, 8/25/21 Letter.)

40. To date, Defendants have failed to pay as required by the Membership Agreement and Regulatory Documents. As of January 1, 2022, the total account balance, with accrued interest, is $278,796.65. (*See* Ex D.) The outstanding balance includes fees for services provided to Defendants by Best Western prior to cancellation as specified in the Membership Agreement of $155,488.89, liquidated damages as specified in the Membership Agreement of $83,598.10, and interest as specified in the Membership Agreement of $39,709.66.

41. As of the date of the complaint, Defendants still have not paid Best Western for their outstanding account balance. With service charges for non-payment, as set forth in the Membership Agreement, the outstanding account balance will grow each month.

## COUNT I – BREACH OF CONTRACT

42. Best Western incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

43. The Membership Agreement is a valid, binding and enforceable contract.

44. Defendants have refused to and continue to refuse to pay Best Western the amounts due and owing as required by the Membership Agreement.

45. Best Western fully performed its obligations under the parties' contract.

46. Defendants' performance under the parties' contract was not excused.

47. To date, Defendants have failed to pay as required by the Membership Agreement and Regulatory Documents. As of January 1, 2022, the total account

7

balance, with accrued interest, was $278,796.65. (*Id.*) The outstanding balance includes fees for services provided to Defendants by Best Western prior to cancellation as specified in the Membership Agreement of $155,488.89, liquidated damages as specified in the Membership Agreement of $83,598.10, and interest as specified in the Membership Agreement of $39,709.66.

48. Pursuant to the express terms of the Membership Agreement, interest has accrued and continues to accrue on the unpaid amounts at 1.5% per month until paid in full.

## COUNT II – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

49. Best Western incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

50. The Membership Agreement is a valid, binding, and enforceable contract.

51. The agreement contains an implied covenant of good faith and fair dealing.

52. Defendants' conduct, as described herein, constitutes a breach of the covenant of good faith and fair dealing implied in the contract.

53. As a direct and proximate result of Defendants' misconduct and failure to perform the parties' contract, Best Western has suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Best Western International, Inc. seeks judgment against Defendants, jointly and severally, as follows:

A. An award to Best Western of its damages in an amount to be proven at trial;

B. Attorneys' fees and costs pursuant to the Membership Agreement, A.R.S. §§ 12-341 and 12-341.01, and any other applicable law;

C. Pre- and post-judgment interest; and

D. Any other relief the Court deems just and proper.

DATED this 10th day of January, 2022.

              PAPETTI SAMUELS WEISS LLP

              /s/Jennifer Lee-Cota
              Jared Sutton
              Jennifer Lee-Cota

              *Attorneys for Plaintiff*

9