**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Best Western International Incorporated, | No. CV-22-00037-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Brookfield Ventures LLC, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff Best Western International, Inc.'s ("Best Western") Motion for Default Judgment against Defendants Brookfield Ventures, LLC, Yadewinder Dhillon, and Gurpreet Dhillon (collectively, "Defendants") (Doc. 12). Also pending before the Court is Defendants' Motion to Set Aside Entry of Default (Doc. 14), Plaintiff's Response in Opposition to Motion to Set Aside Default (Doc. 15), and Defendants' Reply to Response in Opposition to Motion to Set Aside Default (Doc. 16). The Court now rules.

## I.    BACKGROUND

On January 10, 2022, Best Western filed its Complaint against Defendants for breach of contract and breach of the implied covenant of good faith and fair dealing.[1] (Doc. 1). Best Western alleges that Defendants breached a Membership Agreement with Best Western ("the Membership Agreement") and failed to pay their outstanding balance as required by the Membership Agreement. (*Id.* at 3). Defendants failed to respond to Best

---

[1]Best Western seeks default judgment only on its claim for breach of contract, not on its claim for breach of the implied covenant of good faith and fair dealing. (Doc. 12 at 4 n.1).

1   Western's Complaint by February 16, 2022. (Doc. 15 at 5). Consequently, Best Western

2   applied for entry of default, and the Clerk entered default against Defendants on February

3   28, 2022. (Doc. 11).

4        Best Western then filed a Motion for Default Judgment against Defendants on April

5   18, 2022. (Doc. 12 at 9). Two days later, Defendants filed a Motion to Set Aside Entry of

6   Default. (Doc. 14). Best Western opposes Defendants' Motion. (Doc. 15).

7   **II.    LEGAL STANDARD**

8        The Court may set aside an entry of default for good cause. Fed. R. Civ. P. 55(c).

9   To determine whether there is good cause to set aside an entry of default, the Court

10   considers three factors: (1) whether the movant engaged in culpable conduct that resulted

11   in the default; (2) whether the movant had a meritorious defense; and (3) whether setting

12   aside the default judgment would prejudice the non-moving party. *Franchise Holding II,*

13   *LLC v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004). The movant "bears

14   the burden of demonstrating that these [three] factors favor vacating the [default]

15   judgment." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001),

16   *overruled on other grounds by Egelhoff v. Egelhoff*, 532 U.S. 141 (2001). Courts in the

17   Ninth Circuit have determined that generally, default judgments are disfavored, and "cases

18   should be decided upon their merits whenever reasonably possible." *New Gen, LLC v. Safe*

19   *Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (quoting *Eitel v. McCool*, 782 F.2d 1470, 1472

20   (9th Cir. 1986)).

21        **A.    Culpable Conduct**

22        The Court first considers whether Defendants' default was the result of culpable

23   conduct. A movant's conduct is "culpable" if the movant "received actual or constructive

24   notice of the filing of the action and *intentionally* failed to answer." *TCI Grp.*, 244 F.3d at

25   697 (emphasis in original) (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388,

26   1392 (9th Cir. 1988)).

27        Defendants first claim that they "were not properly served." (Doc. 14 at 3).

28   Defendants assert they "travel extensively for business," and Defendant Yadewinder

1 Dhillon contends he was out of town on January 26, 2022, the recorded date of service.

2 (*Id.*). Defendants report they had several people staying at their residence at that time and

3 believe the process server delivered the Summons and Complaint to a house guest or

4 cleaning service employee. (*Id.*). Defendants also allege that they did not discover the legal

5 papers in question until a later, unspecified time, when going through a stack of

6 accumulated mail. (*Id.*).

7 Best Western alleges that Defendants engaged in culpable conduct because they

8 tried to evade process service. (Doc. 15 at 7). Specifically, Best Western asserts that on

9 January 26, 2022, it effected proper service of process on Defendants. (Doc. 15 at 4–5).

10 Best Western claims that its process server handed a Complaint and Summons to "a

11 "Middle Eastern female in her 40s" who "refused to state her true name but who identified

12 herself as a co-resident" at the address Defendants listed on the Membership Agreement.

13 (*Id.* at 5). Best Western also asserts that its process server previously tried to effect service

14 on Defendants, but that failed because "a male in his 50s" told the process server that

15 Defendants had "sold the home and moved to India approximately a year ago." (*Id.* at 5).

16 In their Reply, Defendants argue that they did not attempt to evade service, and the

17 reports of the process server are unsubstantiated. (Doc. 16 at 2). Further, Defendants state

18 that whether they attempted to evade service or not is irrelevant, because culpable conduct

19 concerns "a defendant's conduct *after* being served." (emphasis in original) (*Id.* at 3).

20 The Court agrees with Defendants' arguments. Although Best Western claims that

21 it effected proper service, the Court does not have enough evidence to conclude that the

22 server handed the complaint and summons to Defendant Yadewinder Dhillon's wife. The

23 Court only has the process server's documentation to rely on. (Doc. 15 at 7). Additionally,

24 the Ninth Circuit has determined that "intentionally evading service, even if true, is

25 insufficient to make defendants' failure to answer willful, as no obligation to answer arose

26 until after service was effected." *BMW Fin. Servs., N.A., LLC v. Friedman & Wexler, LLC*,

27 C 09-04498 MHP, 2010 WL 668292, *2 (N.D. Cal. Feb. 24, 2010) (citations and internal

28 quotations omitted); *see also Drake v. Salt River Pima-Maricopa Indian Cmty.*, 411 F.

1    Supp. 3d 513, 517 ("intentional conduct, in this context, must rise to the level of conduct

2    which is willful, deliberate, or done in bad faith.") (citation omitted). Thus, the Court finds

3    Defendants did not engage in culpable conduct based on service evasion.

4          Even if Best Western effected proper service, Defendants' conduct would still not

5    be culpable. Defendants argue that they did not intentionally fail to answer because they

6    "believed the litigation was on hold while the parties were actively attempting to negotiate

7    and resolve the matter." (Doc. 14 at 5). Consequently, Defendants did not file an answer

8    because they believed it was not required. (*Id.*) In response, Best Western contends that its

9    counsel never agreed to "hold off" litigation and informed Defendants of this on April 13,

10   2022. (Doc. 15 at 9). Best Western further argues that "Defendants' ignorance of the law

11   and whether an answer was required is not a basis to set aside a default." (*Id.*).

12         The Ninth Circuit has established two separate standards for whether consciously

13   failing to respond to a complaint fits the meaning of "intentionally." *Hernandez Ramirez*

14   *v. Hansen*, CV-0324-CL, 2021 WL 5364188, *1 (D. Or. Nov. 17, 2021). The applicable

15   standard depends on whether the party seeking to set aside default is considered "legally

16   sophisticated." *Id.* (citing *United States v. Mesle*, 615 F.3d 1085, 1093 (9th Cir. 2010)). If

17   a party is "legally sophisticated," the Court may deem the party's conduct culpable if the

18   party has "received actual or constructive notice of the filing of the action and failed to

19   answer." *Franchise Holding II*, 375 F.3d at 926; *Mesle*, 615 F.3d at 1093 ("When

20   considering a legally sophisticated party's culpability in a default, an understanding of the

21   consequences of its actions may be assumed, and with it, intentionality."). If a party is not

22   "legally sophisticated," the party cannot be treated as "culpable" for simply making a

23   conscious choice not to answer. *Mesle*, 615 F.3d at 1091. Rather, to act "intentionally," in

24   a "culpable" manner, the party "must have acted with bad faith, such as an 'intention to

25   take advantage of the opposing party, interfere with judicial decision making, or otherwise

26   manipulate the legal process.'" *Id.* (quoting *TCI Grp.*, 244 F.3d at 697).

27         A party is "legally sophisticated" when it has familiarity with legal processes and

28   whether the party was in consultation with a lawyer at the time of default. *See TCI Grp.*,

1  244 F.3d at 699 n.6 ("[a]bsent some explanation . . . it is fair to expect that individuals who

2  have previously been involved in litigation or have consulted with a lawyer appreciate the

3  consequences of failing to answer and do so only if they see some advantage to

4  themselves"); *Mesle*, 615 F.3d at 1093 (finding a party was not "legally sophisticated"

5  because he was not a lawyer, nor was he represented "at the time of default").

6        Here, the Court finds that Defendants are not "legally sophisticated." There is no

7  evidence in the record to show that Defendants had previously been involved in litigation.

8  *See Manzo*, 2:15-CV-00313-JWS, 2016 WL 5416141, at *3 (D. Ariz. September 28, 2016)

9  (finding a defendant legally sophisticated when he was "aware of the need to respond to a

10 complaint from his experience with being sued in the past"). Specifically, by emailing Best

11 Western's counsel themselves and stating that they were under the impression that

12 litigation proceedings were "on hold" during the parties' settlement discussions,

13 Defendants demonstrated that they were unfamiliar with the litigation process nor aware

14 they needed to respond to Best Western's complaint. (Doc. 15-1 at 27). *See Mesle*, 615

15 F.3d at 1093 (parties are legally sophisticated when they are "well aware of the dangers of

16 ignoring service" (quoting *Direct Mail Specialists, Inc. v. Eclat Computerized Tech., Inc.*,

17 840 F.2d 685, 690 (9th Cir. 1988)).

18       Nor is there evidence that Defendants had consulted with counsel at or before the

19 time of default on February 17, 2022. (Doc. 11). To the contrary, there is strong evidence

20 that Defendants had not yet consulted with counsel. Specifically, in an email to Best

21 Western's outside counsel on April 12, 2022, Defendant Yadewinder Dhillon wrote, "I am

22 in the process of retaining an Az [sic] attorney." (Doc. 15-1 at 27). Additionally, while on

23 April 18, 2022, Best Western mailed and emailed a copy of its Motion for Default

24 Judgment listing only Defendants as recipients. (Doc. 12 at 9). In contrast, on May 4, 2022,

25 Best Western mailed and emailed a copy of its Response to Defendants' Motion to Set

26 Aside Default, this time listing Defendants' counsel as recipients. (Doc. 15 at 11). This

27 evidence suggests Defendants had not yet consulted with counsel at the time of default.

28       Because the Court finds that the Defendants are not "legally sophisticated,"

1    Defendants "must have acted with bad faith, such as an 'intention to take advantage of the

2    opposing party, interfere with judicial decision making, or otherwise manipulate the legal

3    process'" for the Court to deem their conduct "culpable." *Mesle*, 615 F.3d at 1091 (quoting

4    *TCI Grp.*, 244 F.3d at 697).

5         Here, the Court finds no evidence that Defendants acted in bad faith. First,

6    Defendants have introduced evidence that they were unaware of Best Western's Complaint

7    against them. As discussed above, Defendants believe that Best Western's process server

8    gave the Summons and Complaint to one of the number of guests or cleaning service

9    employees at Defendants' residence at the time. (*Id.*). This is further evidenced by an email

10   exchange between Best Western's Senior Corporate Counsel Emily Cates and Defendant

11   Yadewinder Dhillon on February 28, 2022. After Ms. Cates wrote that "Best Western

12   International, Inc. was forced to file a lawsuit … you have been served with the lawsuit …

13   and default was recently entered against you by the Clerk," (Doc. 15-1 at 24), Mr. Dhillon

14   replied, "We have not received any documents neither i [sic] was unaware of complaints

15   being filed …" (*Id.*). Thus, it is unclear that Defendants had notice of the Complaint on

16   February 17, 2022, the time of default.

17        Second, Defendants have produced evidence that they were unaware that they

18   needed to respond to Best Western's Complaint. Defendants maintain that they were under

19   the impression that litigation proceedings were "on hold" during the parties' settlement

20   discussions. (Doc. 14 at 5). During an email exchange from these discussions on April 12,

21   2022, Mr. Dhillon wrote, "Our agreement was to hold the legal process while we are

22   negotiating to settle the issue … the compliant was not received by me on till [sic] it was

23   emailed to me. We should be given ample time to respond." (Doc 15-1 at 27). On April 13,

24   2022, Best Western's outside counsel responded, "There is no 'hold' nor has there ever

25   been a 'hold' and Best Western will proceed with litigating this case." (*Id.*). One week

26   following this exchange, Defendants had hired legal counsel and filed a motion to set aside

27   the entry of default. (Doc. 14). This email exchange—and Defendants' subsequent

28   actions—supports Defendants' claim that they did not file an answer because they did not

1    believe one was required. (Doc. 14 at 5). Thus, ultimately, the evidence does not support

2    the assertion that Defendants acted in bad faith or had "an intention to take advantage of

3    the opposing party, interfere with judicial decision making, or otherwise manipulate the

4    legal process." *TCI Grp.*, 244 F.3d at 697.

5         Although Best Western argues "ignorance of the law" is not a basis to void default,

6    (Doc. 15 at 9), it is evidence to suggest that Defendants did not act in bad faith. For

7    example, in *Mesle*, the Ninth Circuit concluded that a defendant's ignorance of the law,

8    was insufficient to establish culpability, where the defendant could not comprehend his

9    legal obligations without assistance from counsel. 615 F.3d at 1093 ("[The defendant]'s

10   failure to act … is insufficient to establish culpability; to the contrary, the facts demonstrate

11   that Mesle was ignorant of the law and unable to understand correctly his legal obligations

12   … without the help of a lawyer."); *Indus. Advanced Techs. v. Matthews Studio Equip.*, No.

13   CV 17-4962-GW(RAOx), 2019 WL 13031498, at *2 (C.D. Cal. Apr. 22, 2019). Based on

14   the record before it, the Court concludes that none of Defendants' conduct suggests the bad

15   faith necessary to find that they intentionally failed to answer Plaintiff's complaint. This

16   factor weighs in favor of setting aside the default.

17        **B.    Meritorious Defense**

18        Next, the Court determines whether Defendants have a meritorious defense. To

19   demonstrate a meritorious defense, a defendant must show "there is some possibility that

20   the outcome of the suit after a full trial will be contrary to the result achieved by default."

21   *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986). However, the

22   burden on a defendant is "not extraordinarily heavy." *TCI Grp.*, 244 F.3d at 700. Although

23   general and conclusory assertions do not satisfy this burden, a defendant need only allege

24   sufficient facts to raise "a *potentially* meritorious defense." *Id.* at 699 (emphasis added).

25        Here, Defendants allege sufficient facts to show that they have a potentially

26   meritorious defense. (Doc. 14 at 7; Doc. 16 at 4–5). Defendants argue that they were not

27   in breach of the Membership Agreement because Best Western misrepresented the

28   favorable returns Defendants would receive by becoming a Premier Hotel. (Doc. 16 at 5).

- 7 -

1   Defendants assert that they "invested over $9 million into renovating [their] hotel based on

2   [Best Western's] representations." (*Id.*). Accordingly, Defendants contend that Best

3   Western was in breach of the Membership Agreement. (Doc. 14 at 7).

4          Best Western argue that Defendants do not provide "specific facts that would

5   constitute a defense." (Doc. 15 at 8). Best Western further states that Defendants contend

6   "in a conclusory fashion they did not breach the Membership Agreement." (*Id.* at 8).

7   However, under Defendants' alleged facts, Defendants detrimentally relied on Best

8   Western's representations, which later turned out to be false. (Doc. 14 at 7). These facts

9   represent a potentially meritorious defense of equitable estoppel to Best Western's breach

10  of contract claim. *See Tiffany, Inc. v. W.M.K. Transit Mix, Inc.,* 493 P.2d 1220, 1224 (Ariz.

11  Ct. App. 1972) (stating that equitable estoppel involves a misrepresentation of present

12  fact(s) and a party relying on this misrepresentation can only use equitable estoppel as a

13  defense when the misrepresenting party makes a claim against him).

14         Thus, Defendants have met the low burden of alleging facts that "may cause a

15  different result than default." *ThermoLife Int'l*, *LLC. v. Sechel Holdings, Inc.*, CV 14-2291-

16  PHX-JAT, 2015 WL 1521779, at *2; *see TCI Group*, 244 F.3d at 700 (stating a defendant's

17  burden in this regard is "not extraordinarily heavy"). Accordingly, the Court finds that

18  Defendants have established a meritorious defense, which weighs in favor of setting aside

19  the default.

20  **C.    Prejudice to Plaintiff**

21         Finally, the Court considers whether setting aside default would result in prejudice

22  to Best Western. *Mesle*, 615 F.3d at 109. Setting aside default is considered prejudicial if

23  doing so would "result in greater harm than simply delaying resolution of the case. Rather,

24  'the standard is whether [the plaintiff's] ability to pursue [its] claim will be hindered.'" *TCI*

25  *Grp.*, 244 F.3d at 701 (citation omitted). Specifically, to be prejudicial, "the delay [caused

26  by setting aside default] must result in tangible harm such as loss of evidence, increased

27  difficulties of discovery, or greater opportunity for fraud or collusion" *Id.* (citation

28  omitted).

1          In its Response to Defendants' Motion to Set Aside Default, Best Western makes

2    no statement regarding the prejudicial impact of setting aside default. *See generally* (Doc.

3    15). However, in its Motion for Default Judgment, Best Western argues that failure to grant

4    default judgment would result in prejudice "given the unsuccessful attempts to resolve this

5    matter outside of Court … [if default judgment is not granted, Best Western] will likely be

6    without other recourse for recovery." (Doc. 12 at 4). Yet contrary to when Best Western

7    made this claim, Defendants are now active in this lawsuit, have engaged counsel, and have

8    filed a Motion (Doc. 14) and a Reply (Doc. 15). Because it appears Best Western is no

9    longer without other recourse for recovery, the Court concludes this argument is without

10   merit.

11         In addition, even if Best Western had made the argument that setting aside default

12   would result in prejudice, the Court finds no support in the record that reversing the Clerk's

13   Entry of Default would result in "loss of evidence, increased difficulties of discovery, …

14   greater opportunity for fraud or collusion," or other tangible harm beyond delaying

15   resolution. *TCI Grp.*, 244 F.3d at 701. Further, the Court sees no additional indication that

16   setting aside default would hinder Best Western's ability to pursue its claim, as "vacating

17   the default judgment merely restores the parties to an even footing in litigation." *Id.*

18   Therefore, the Court finds that vacating the Clerk's Entry of Default would not result in

19   prejudice to Best Western, which also weighs in favor of setting aside default.

20   **III.    CONCLUSION**

21         In conclusion, the Court finds the following: (1) Defendants did not engage in

22   culpable conduct resulting in default; (2) Defendants provided a meritorious defense; (3)

23   setting aside default would not result in prejudice to Best Western. All three of the

24   foregoing factors weigh in favor of setting aside default. Further, the Court recognizes the

25   Ninth Circuit's preference for resolving cases on their merits whenever reasonably

26   possible. Consequently, the Court concludes that setting aside the Clerk's Entry of Default

27   is warranted. Because the Court has set aside the entry of default as to Defendants, Best

28   Western's Motion for Default Judgment (Doc. 12) will be denied as moot.

1    Accordingly,

2        **IT IS ORDERED** that Defendants' Motion to Set Aside Entry of Default (Doc. 14)

3    is **GRANTED**.

4        **IT IS FURTHER ORDERED** that Plaintiff's Motion for Default Judgment

5    Against Defendants (Doc. 12) is **DENIED**. The Clerk's Entry of Default (Doc. 11) is set

6    aside.

7        **IT IS FURTHER ORDERED** that Defendants' answer or other response to the

8    complaint shall be due within fourteen (14) days from this Order.

9        Dated this 15th day of July, 2022.

10

11

12                                James A. Teilborg
                           Senior United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28